# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

ALISA A. TANNER,

                                                Plaintiff,

v.                                                          5:17-CV-466 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                                Defendant.

HOWARD D. OLINSKY, ESQ., for Plaintiff
MICHELLE L. CHRIST, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

## I. PROCEDURAL HISTORY

On January 7, 2014, plaintiff filed an application for Disability Insurance Benefits ("DIB"). (Administrative Transcript ("T.") at 231-32). On January 22, 2014 plaintiff protectively filed[1] a claim for Supplemental Security Income ("SSI") benefits. (T. 233-38). Both applications alleged an onset date of September 1, 2012. (T. 231,

---

[1] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

233). The applications were denied initially on March 26, 2014. (T. 82-111). Administrative Law Judge ("ALJ") Marie Greener conducted a hearing on October 15, 2015, at which plaintiff testified. (T. 57-81). The ALJ held a supplemental hearing on February 22, 2016, to hear the testimony of Vocational Expert ("VE") Robert Baker. (T. 38-56).

In a decision dated March 16, 2016, the ALJ found that plaintiff was not disabled. (T. 8-27). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on March 6, 2017. (T. 1-7).

## II.     GENERALLY APPLICABLE LAW

### A.     Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

### III.  FACTS

As of the date of her 2015 administrative hearing, plaintiff was 41 years old.  (T. 61).  At the time, she resided with her brother at his home. (*Id.*)  Plaintiff had completed

at least the eleventh grade,[2] in regular education classes. (T. 62, 261, 390). She had a driver's license, and was able to drive herself to local appointments or short errands in her brother's car. (T. 62, 71-72).

Plaintiff's most recent employment was at a night club, in various positions including DJ, bartender, and part-time manager over a period of approximately fourteen years. (T. 64, 279). During that same period, plaintiff had also briefly held positions as a disc jockey at a local radio station and a telephone sales associate at a call center. (T. 65-67, 279). In 2012, plaintiff left her position at the night club when her depression and anxiety symptoms interfered with her ability to work. (T. 62-63).

Plaintiff first received mental health treatment for depression and anxiety in 2003. (T. 69). She received intermittent treatment until approximately November 2013, when she began weekly therapy sessions and attended monthly meetings to monitor her medication. (T. 70, 390). She testified that her depression and anxiety made it difficult for her to leave her room or to go outside the house. (T.62-63, 71). Although she had previously enjoyed socializing with friends and attending concerts, she increasingly felt a need to isolate herself from others. (T. 68, 71-72). She testified that she experienced frequent panic attacks, and felt that she might have one during her hearing. (T. 67, 70-71).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 14-19). Rather than reciting this evidence at the outset, the

---

[2] Plaintiff testified that she had graduated high school, but reported during the application process that she had only completed the eleventh grade. (T. 261). The ALJ noted this discrepancy in her decision. (T. 20).

court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.  THE ALJ'S DECISION

The ALJ first determined that plaintiff met the insured status requirements through March 31, 2017. (T. 13). The ALJ then determined that plaintiff had not engaged in substantial gainful activity from September 1, 2012, the alleged onset date. At step two of the sequential evaluation, the ALJ found that plaintiff's affective disorder, anxiety disorder, and borderline personality disorder were severe impairments. (T. 13). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 14-15).

The ALJ found at step four of the analysis that plaintiff had the RFC to perform work at all exertion levels, but was limited to unskilled work that did not require more than simple and short interactions with supervisors, coworkers or the public. (T. 16-19). Although the ALJ found that plaintiff could work in proximity to others, she found that the work tasks should not require working in conjunction with others, and should predominately involve working with objects rather than people. (T. 16). In addition, the ALJ limited plaintiff to a "low stress work environment," defined as one involving routine daily tasks and duties in the same workplace that do not significantly change in pace or location on a daily basis. (T. 16).

In making the RFC determination, the ALJ stated that she considered all of the plaintiff's symptoms, and considered the extent to which those symptoms could

6

"reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Rulings ("SSRs") 96-4p and 96-7p. (T. 16). Finally, the ALJ stated that she considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id.*).

The ALJ also found that plaintiff's description of her impairments and the resulting functional limitations were not fully credible in light of the record evidence. (T. 18-19). The ALJ next determined that plaintiff was unable to perform her past relevant work. (T. 19). Relying on the VE testimony, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (T. 20-21). Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of September 1, 2012 through the date of her decision. (T. 21).

## V.     ISSUES IN CONTENTION

Plaintiff raises the following argument:

(1)     The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical evidence regarding plaintiff's mental impairments. (Pl.'s Br. at 10-18) (Dkt. No. 11).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 5-11) (Dkt. No. 12). For the following reasons, this court agrees with defendant and will dismiss the complaint.

# DISCUSSION

## VI. RFC EVALUATION/TREATING PHYSICIAN

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical

facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran,* 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### B. Application

Plaintiff has not challenged the ALJ's determination regarding plaintiff's physical limitations, but contends that the ALJ erred in assessing the limitations imposed by plaintiff's depression and anxiety. (Pl.'s Br. at 10-16). As noted above, the ALJ limited plaintiff to unskilled jobs that did not require more than simple, short interactions with others, and predominately involved working with objects rather than people, in a low stress work environment. (T. 16). Plaintiff argues that in reaching this mental RFC determination, the ALJ did not properly weigh the medical evidence. This court disagrees, and concludes that the ALJ's assessment of plaintiff's mental

impairments was supported by substantial evidence.

In reaching her RFC determination, the ALJ assigned "considerable weight" to three medical opinions: (1) the March 18, 2014 opinion of Dr. Dennis Noia, who performed a consultative psychiatric examination; (2) the March 21, 2014 opinion of state agency psychologist Dr. R. Nobel; and (3) the October 4, 2015 Medical Source Statement ("MSS") completed by Heather Henderson, a nurse practitioner ("NP") who treated plaintiff on a regular basis. (T. 17, 87-90, 390-94, 476-78). The ALJ found that these opinions were all consistent with one another, and showed similar limitations with regard to the performance of simple tasks, social interaction, and handling stress. (T. 17).

Dr. Noia reported that plaintiff was cooperative during the examination, and demonstrated an adequate manner of relating, social skills, and overall presentation. (T. 392). Plaintiff reported that she had been receiving weekly psychiatric counseling sessions since November 2013, and had previously received similar treatment in 2012. (T. 390). She described "symptoms of depression, including dysphoric moods, crying spells, feelings of guilt, loss of usual interests, increased irritability, psychomotor agitation, fatigue and loss of energy, diminished self esteem, problems with memory, problems with concentration, diminished sense of pleasure, and rare thoughts of suicide with no suicidal intent." (T. 391). She also described symptoms of anxiety and reported experiencing panic attacks on a daily basis. (*Id*.). During the examination, plaintiff did "not report any significant manic related symptoms, or symptoms of a formal thought disorder or cognitive dysfunction," but reported that she often isolated herself from

others in social situations. (T. 391, 393).

Dr. Noia reported that plaintiff showed coherent and goal directed thought processes during the examination, with no evidence of delusions, hallucinations, or disordered thinking. (T. 392). Her affect was constricted, and "somewhat reduced in intensity compared with [plaintiff's] thoughts and speech. (*Id*.) She demonstrated an anxious mood, and appeared "somewhat tense and apprehensive." (*Id*.) Dr. Noia observed that plaintiff's attention and concentration were intact, and that she was able to do counting, simple calculations, and serial threes. (*Id*.) Her recent and remote memory skills were intact. (*Id*.)

Based on his examination, Dr. Noia opined that plaintiff appeared to have no limitations in understanding and following simple instructions and directions, and mild limitations performing simple tasks. (T. 393). Plaintiff also appeared to have mild limitations performing complex tasks, maintaining adequate attention and concentration, attending to a routine, keeping to a schedule, and learning new tasks. (*Id*.) Dr. Noia opined that plaintiff had no limitations regarding her ability to make appropriate decisions, and that plaintiff was able to relate to and interact moderately well with others. (T. 393). He further opined that plaintiff had "moderate to marked limitations" regarding her ability to deal with stress. (*Id*.)

Plaintiff contends that although the ALJ purported to assign "considerable weight" to Dr. Noia's opinion, the RFC determination ignored Dr. Noia's finding of "moderate to marked" limitations in handling stress, and failed to make adequate accommodation in this area. However, the ALJ expressly considered Dr. Noia's

11

findings with regard to stress, attention, and concentration, as well as Dr. Noia's conclusion that plaintiff could still follow simple instructions and directions despite her limitations. (T. 16-17, 393). *See Warren v. Comm'r of Soc. Sec.*, 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *7 (N.D.N.Y. November 18, 2016) (finding that ALJ had adequately addressed consultative examiner's opinion regarding "moderate to marked" limitations by incorporating examiner's overall opinion that plaintiff could perform simple routine tasks despite her limitations).

In addition, the ALJ not only limited plaintiff to "low stress" work environments as part of her RFC determination, but also limited plaintiff to work that predominantly involved working with objects, and required no more than "simple, short" interactions with supervisors, coworkers, or the public. (T. 16). Plaintiff had testified that a significant source of her stress and inability to function at work stemmed from confrontations with other people, rather than difficulties with the work itself. (T. 64, 67, 71). Therefore, the ALJ had substantial evidence for the weight assigned to Dr. Noia's opinion, and the manner in which she incorporated that opinion into the RFC determination.

Dr. Nobel, the state agency consultant, opined that plaintiff was capable of "performing simple and some complex work," but that "she would work best in a setting with limited contact with others." (T. 90). The ALJ found this opinion to be consistent with the other objective and subjective medical evidence. (T. 17). Dr. Nobel did not examine plaintiff, but had reviewed her then-current medical records. (T. 87-89). A non-examining state agency consultant's opinion may be relied upon where it is

supported by other record evidence. *See Swan v. Astrue*, No. 09-CV-486-S, 2010 WL 3211049, at *5 (W.D.N.Y. August 11, 2010) ("State agency medical consultants are qualified experts in the evaluation of disability claims and as such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

NP Henderson based her October 4, 2015 opinion on plaintiff's monthly medication visits and weekly psychotherapy sessions.[3] (T. 476). She diagnosed plaintiff with panic disorder with agoraphobia, major depressive disorder, and borderline personality disorder. (*Id*.) NP Henderson described plaintiff's symptoms as including anhedonia or pervasive loss of interest in almost all activities; generalized persistent anxiety; difficulty thinking or concentrating; emotional withdrawal or isolation; persistent disturbances of mood or affect; easy distractibility; memory impairment; and recurrent severe panic attacks. (*Id*.)

NP Henderson opined that plaintiff was "unable to meet competitive standards"[4] with regard to traveling to an unfamiliar place and using public transportation. (T. 477). She opined that plaintiff was "seriously limited, but not precluded"[5] from working in coordination with or in proximity to others without being unduly distracted; completing a normal workday and workweek without interruption from psychologically based

---

[3] Dr. Daniel Kang also signed the October 4, 2015 MSS, but noted that he had not been involved in plaintiff's diagnosis or direct care. (T. 478).

[4] The MSS defined "unable to meet competitive standards" as an inability to "satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." (T. 477).

[5] The MSS defined "seriously limited, but not precluded," as an "ability to function in this area [that] is seriously limited and less than satisfactory, but not precluded in all circumstances." (T. 477).

symptoms; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; responding appropriately to changes in a routine work setting; dealing with normal work stress; and interacting appropriately with the general public. (*Id.*)

NP Henderson also opined that plaintiff was "limited but satisfactory" with regard to remembering work-like procedures; carrying out very short and simple instructions; sustaining an ordinary routine without special supervision; making simple work-related decisions; performing at a consistent pace without an unreasonable number and length of rest periods; asking simple questions or requesting assistance; maintaining socially appropriate behavior; and adhering to basic standards of neatness and cleanliness. (*Id.*) NP Henderson also opined that plaintiff had "unlimited or very good" abilities with regard to understanding and remembering very short and simple instructions, and being aware of normal hazards and taking appropriate precautions. (*Id.*)

NP Henderson found that plaintiff had repeated episodes of deterioration or decompensation in work-like settings, which caused plaintiff to withdraw from the situation or experience exacerbation of signs and symptoms. (T. 478). In the narrative section of her MSS, NP Henderson stated that she had not observed plaintiff in a work setting, but based her opinion on plaintiff's reports of severe anxiety in social situations and other day to day activities. (T. 477). NP Henderson also noted plaintiff's description of inappropriate reactions toward other co-workers and peers when

14

provoked. (*Id.*)

The ALJ did not adopt NP Henderson's opinion that plaintiff would be off task twenty percent of the workday and absent from work more than four days per month due to her impairments. (T. 17). The ALJ found no support in the record for these conclusions, and explained that such restrictive findings were inconsistent with NP Henderson's own notes. (*Id.*) On the MSS, NP Henderson had noted that plaintiff had successfully maintained attendance at her appointments. (T. 477). NP Henderson also declined to assess plaintiff's ability to maintain attention for a two hour segment, because she had only interacted with plaintiff in one hour therapy sessions. (T. 477). The ALJ also found that the opinion that plaintiff would be off-task for substantial periods was inconsistent with Dr. Noia's conclusions that plaintiff had intact attention, concentration, and memory skills. (T. 17, 392).

The ALJ assigned "little weight" to the October 7, 2015 opinion of WesleyAnn Balcom, a licensed master social worker who met plaintiff for weekly therapy sessions beginning in May 2014. (T. 17, 480). Ms. Balcom completed the same MSS form as NP Henderson, but offered a far more restrictive opinion of plaintiff's limitations. (T. 480-482). She opined that plaintiff was "unable to meet competitive standards" or had "no useful ability to function" in almost all functional areas, including working in coordination or proximity to others, accepting instructions and responding appropriately to criticism from supervisors, and dealing with normal work stress. (T. 481). Ms. Balcom opined that plaintiff had "great difficulty [with] interpersonal interactions," and that plaintiff's "anxiety does not allow for going outside [the] house

15

without being medicated." (*Id.*)  Ms. Balcom also opined that plaintiff "has difficulty remembering simple instructions and needs reminders and assistance on a daily basis." (*Id.*)  Ms. Balcom also opined that plaintiff "would decompensate significantly if required to participate in a work setting." (T. 482).

Plaintiff contends that, even if Ms. Balcom is not an acceptable source, her extensive treatment history with plaintiff entitled her opinion to greater weight. (Pl.'s Br. at 15).  However, the ALJ offered a number of other reasons that provided substantial evidence to discount Ms. Balcom's opinion.  First, the ALJ found that the extensive limitations described by Ms. Balcom were inconsistent with, or contradicted by, the other opinion evidence in the record. (T. 18).  Next, the ALJ found that Ms. Balcom's opinion was inconsistent with plaintiff's daily activities. (*Id.*)  For example, the ALJ cited plaintiff's statements that she went to the mall, walked four miles a day outdoors, drove to Syracuse every week for allergy shots, and took her brother's dog for walk as inconsistent with Ms. Balcom's opinion that plaintiff had difficulty leaving her house without being medicated. (T. 18, 481, 497, 528).  The ALJ also referenced a series of treatment notes from 2014, 2015, and 2016 that contradicted the significant restrictions described in Ms. Balcom's opinion, and instead depicted plaintiff's symptoms as stable or improving. (T. 18, 471-72, 505, 516, 528, 692).

It is the province of the ALJ to resolve genuine conflicts in the record.  *Veino v. Barnhart*, 312 F.3d at 588.  However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).  Here, the ALJ

resolved conflicts between the various medical opinions by assigning the greatest weight to those opinions that she deemed most consistent with plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record. *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole). In light of the ALJ's detailed analysis of plaintiff's medical history, the relevant medical opinions, and plaintiff's activities of daily living, this court concludes that her RFC determination was supported by substantial evidence.

## VII.   STEP FIVE DETERMINATION

Plaintiff did not raise any direct challenge to the ALJ's reliance upon the VE testimony, so the court will only briefly address the issue. One of the ALJ's hypothetical questions to the VE mirrored her RFC determination. (T. 1203-1204). Because this court has found that the ALJ's RFC determination was supported by substantial evidence, it also finds that the ALJ's determination at step five, and the ultimate determination of disability, were similarly supported by substantial evidence.[6]

**WHEREFORE**, based on the findings above, it is

---

[6] The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue,* 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an ALJ's RFC analysis, which is supported by substantial facts, the hypothetical is proper. *Id.* at 276-277.

17

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated: June 5, 2018

Hon. Andrew T. Baxter
U.S. Magistrate Judge